THE DELAWARE AND RARITAN CANAL AND CAMDEN AND
AMBOY RAILROAD AND TRANSPORTATION COMPANIES *vs.*
THE CAMDEN AND ATLANTIC RAILROAD COMPANY, THE
RARITAN AND DELAWARE BAY RAILROAD COMPANY, and
others.

The complainants have, by virtue of their contract with the state of New
Jersey, the exclusive franchise of transporting passengers and freight,
by railway, across the state, between the cities of New York and Phila-
delphia, and are entitled to the protection of a court of equity in the en-
joyment of that franchise.

The incorporation of the Camden and Atlantic Railroad Company to con-
struct a railroad across the state from Camden to the sea and the incor-
poration of the Raritan and Delaware Bay Railroad Company to con-
struct a railroad from Raritan bay to Cape Island were no violation, on
the part of the state, of its contract with complainants.

The junction of these two railroads at their necessary and legitimate

---

* For the other cases decided at this term, see Vol. I, page 320.

VOL. II.                    B

points of intersection, so as to form, with the aid of steamboats on the Delaware river and Raritan bay, a continuous line, which, by possibility, may be used for the transportation of passengers and merchandise across the state, between the cities of New York and Philadelphia, constitutes no violation of the complainants' rights.

There being a legitimate purpose for what these roads may be constructed and used, and for which a junction between them may be formed, the defendants cannot be restrained from effecting such junction, merely because it may be perverted to an unlawful purpose.

The fact that either of said roads, or the connection between them, is being constructed without lawful authority, constitutes no ground for equitable relief against said construction at the instance of the complainants, unless their rights will be thereby violated.

The answers of the defendants held to be a full denial of the equity of the complainants' bill, and although such unauthorized construction and connection of the roads may afford evidence of a fraudulent design to violate the rights of the complainants, it is not sufficient, on a motion for a preliminary injunction, to overcome the answers of the defendants.

No duties imposed upon the defendants by their charters, and no contract into which they may have entered with third persons, or with each other, can justify any violation of complainants' rights, or afford protection against the consequences of such violation.

---

This case came before the Chancellor on the hearing of a rule to show cause why a preliminary injunction should not be granted on a bill filed by complainants, by which they seek to be protected in the enjoyment of certain franchises and privileges granted to them by the state of New Jersey.

The complainants ask that an injunction should issue to prevent the formation, by the defendants, of a continuous line of conveyance by railroad from the Delaware river to Raritan bay, by a junction of their respective roads, which might be used for the transportation of passengers or merchandise between the cities of New York and Philadelphia, or to compete in business between the said cities with the railroads of the complainants, or that might in any manner be used or intended to be used for the purpose of defeating the true intent of the contracts made by the state with the complainants, to protect, until the first day of January, 1869, the business of the complainants' railroad from competition between the cities of New York and Philadelphia.

The exclusive privileges claimed by the complainants depend mainly upon the acts of March 2d, 1832, and of March 16th, 1854. By the second section of the act of 1832, it is enacted, "that it shall not be lawful, at any time during the said railroad charter, to construct any other railroad or railroads in this state, without the consent of said companies, which shall be intended or used for the transportation of passengers or merchandise between the cities of New York and Philadelphia, or to compete in business with the railroad authorized by the act to which this supplement is relative."

By the preamble of the act of 1854, it is recited, that by reason of existing contracts between the state and the companies, as set forth in their acts of incorporation and other acts in relation to the said companies, they are possessed of certain exclusive privileges, which prevent the construction, except by their consent, of any other railroad or railroads in this state which shall be intended or used for the transportation of passengers or merchandise between the cities of New York and Philadelphia, or to compete in business with the railroads of the said companies. And by the first section of the act it is enacted, that it shall not be lawful, before the 1st day of January, 1869, to construct any other railroad or railroads in this state, without the consent of the said joint companies, which shall be used for the transportation of passengers or merchandise between the cities of New York and Philadelphia, or to compete in business between the said cities with the railroads of the said joint companies, or that may in any manner be used or intended to be used for the purpose of defeating the true intent of the act passed March the 2d, 1832, or of this act, which intent and meaning are hereby declared to be fully and effectually to protect, until the 1st day of January, 1869, the business of the said joint companies from railroad competition between the cities of New York and Philadelphia.

The Camden and Atlantic Railroad Company, one of the corporations who are made defendants, by virtue of their charter, granted on the 17th of March, 1852, have construct-

ed a railroad from the city of Camden through the counties of Camden and Atlantic, a distance of about sixty miles, to the ocean at Absecom inlet, in the county of Atlantic.

The Raritan and Delaware Bay Railroad Company, the other defendant corporation, by virtue of their charter, granted on the 3d of March, 1854, and of the supplements thereto, were authorized to construct a railroad from some suitable point on Raritan bay, eastward of the village of Keyport, in the county of Monmouth, through the counties of Monmouth, Ocean, Burlington, Atlantic, and Cape May, to Cape Island, on the Atlantic ocean; the general course of the route of the road, as prescribed in the charter, being nearly parallel with the line of the sea coast, and in its direct course crossing the Camden and Atlantic railroad nearly forty miles from Philadelphia. At the time of filing the complainants' bill this road was in the course of construction, and it is alleged, in the bill, that the company are not constructing their road on the route prescribed by their charter, but that the road is made to diverge ten miles to the westward of the direct route to May's Landing, one of the points in the prescribed route, to Atsion, near the extreme northwest corner of the county of Atlantic, for the purpose of approaching nearer to the city of Philadelphia, and by means of a connection with the Camden and Atlantic road, formed by a branch road from Atsion to Jackson, forming a continuous and convenient railroad line to Camden, and thereby interfering with the chartered rights of the complainants. It is not suggested that the granting of these charters, or either of them, by the legislature, or that railroads constructed in accordance with the route prescribed in these acts of incorporation, constitute any violation of the contract made by the state with the complainants; but the complaint is, that the junction thus illegally attempted to be formed between the roads of the defendants, much nearer to the city of Philadelphia than was contemplated or authorized by their charters, will open a communication by railroad and steamboat between the cities of New York and Philadelphia, which will

compete in business with the complainants' railroad, and thereby infringe their chartered rights.

The Camden and Atlantic company, by their answer, alleged that they were authorized to construct a branch road from some convenient point on their main road, to be determined upon by the company, to Batsto, in the county of Burlington; that they located their branch railroad from Jackson station, on the main line of their road, to a point near Atsion (which branch constitutes the connecting link of the two roads of the defendants); that the terminus of the Batsto branch at Jackson is the most convenient and proper point on their railroad from which to make a branch solely for a local road; that it is the most practicable route for the said branch, so far as the topography of the country is concerned; and that the branch was so located, because it was supposed that such location will best promote the interest of the stockholders and of the people of the counties through which the road passes, and will best answer the design of the legislature in authorizing such branch. They admit that an additional reason for thus locating the Batsto branch through Atsion was, that thereby a nearer and more direct communication will be opened between Batsto and the city of New York and points in the line of the Raritan and Delaware Bay railroad. They do not admit, nor do they deny that the controlling reason for that location of the Batsto branch was to aid the Raritan and Delaware Bay Railroad Company in their purpose of approaching nearer to the city, and by means of a connection with the Camden and Atlantic road, forming a continuous and convenient line to Camden.

The Raritan and Delaware Bay Railroad Company, and the president and other officers of the company, by their answer, among other things, admit that at the time of obtaining from the legislature their act of incorporation, no person interested in the application for said road had any intention of constructing a railroad to transport passengers or merchandise between the cities of New York and Phila-

B*

delphia. They admit that the road, as constructed, diverges about ten miles from the direct route to May's Landing, but say, that the location by way Atsion, as at present located, is the most feasible, expedient, and proper location for the railroad contemplated in the act of incorporation, and that the direct route from Squankum to May's Landing was surveyed by direction of the company, and found to be impracticable, and that the terminus of the Batsto branch (which forms the connecting link between the two roads) at Jackson is the most convenient and proper point on the Camden and Atlantic road from which to make a branch solely for a local road. They deny that any agreement has been made, or is intended to be made, for the transportation of freight or passengers between the cities of New York and Philadelphia. They admit that they and the Camden and Atlantic Railroad Company have in view the construction and perfecting, by means of their respective railroads and a convenient connection between them, of a continuous and convenient line of railway communication across New Jersey, from the city of Camden to Port Monmouth; but they deny that they, or any of them, have in view the continuation of said line, at either end thereof, by steamboat transportation to the cities of New York and Philadelphia, for the purpose of using the same for the transportation of passengers or merchandise in a manner which will violate any contract between the state and the complainants or any provisions of the acts of the legislature referred to in the complainants' bill. They also deny that any contract or arrangement made by them is calculated or intended to form a continuous line of railway communication between the said cities to compete in business with the business of the complainants contrary to their vested rights. They admit that it is possible, if not prohibited by law, that a line of communication by railroad and steamboat between the cities of New York and Philadelphia might be opened; but they say that their railroad is not a public highway, and cannot so be used without their concurrence and consent; and as they have made no arrangement whatsoever so to use the

same, and do not intend any unlawful use of their road, such use, if unlawful, cannot be made, and if attempted, can be restrained by the courts. They also deny that they intend in any way to violate the chartered rights of the complainants, or that they *intend during their existence to violate any of the alleged exclusive privileges of the complainants.* And the defendants, all and each of them, declare that it is not and never has been their intention, by the construction of their railroad, or its connections with the Camden and Atlantic railroad or otherwise, to interfere with the complainants' chartered rights by competing with the railroad of the complainants by the transportation of passengers or merchandise between the cities of New York and Philadelphia or otherwise.

The answers having been filed, and affidavits taken touching certain allegations in the answers, the case was heard upon a motion for a preliminary injunction, as prayed for in the bill, to restrain the defendants from forming the proposed junction between their respective roads.*

*J. P. Stockton* and *Bradley*, for complainants.

*Williamson* and *Zabriskie*, for defendants.

THE CHANCELLOR. The necessity for an immediate decision of this cause has allowed no opportunity for the preparation of an extended opinion. But the thorough research and elaborate arguments of counsel (for which I acknowledge my indebtedness) have satisfied me as to the principles which must be recognised, and the conclusions which must be adopted in the disposition of the motion now before the court. Those principles and conclusions I shall therefore now state, without any attempt to present in detail the reasons upon which they are founded.

1. The complainants have, by virtue of their contract

---

* See the same case reported in 1 McCarter 445.

with the state of New Jersey, the exclusive franchise of transporting passengers and freight by railway across the state, between the cities of New York and Philadelphia, and are entitled to the protection of a court of equity in the enjoyment of that franchise.

2. There is no sufficient evidence in the cause that the rights which the complainants, by their bill, seek to maintain have been impaired or relinquished by consent, or the complainants' right to protection forfeited by acquiescence in the acts of the defendants.

3. The incorporation of the Camden and Atlantic Railroad Company to construct a railroad across the state from Camden to the sea, at or near Absecom inlet, and the incorporation of the Raritan and Delaware Bay Railroad Company, to construct a railroad from Raritan bay to Cape Island, were no violation on the part of the state of their contract with the complainants.

4. The junction of the Camden and Atlantic railroad with the Raritan and Delaware Bay railroad, at their necessary and legitimate point of intersection, so as to form a continuous, though circuitous line of railway from Camden to the Raritan bay, and which, with the aid of steamboats upon the Delaware river and Raritan bay, will form a continuous line, and which by possibility may be used for the transportation of passengers and merchandise across the state, between the cities of New York and Philadelphia, constitutes no violation of the complainants' rights.

5. There is a legitimate purpose for which these roads, thus united, may be used, viz. the transportation of freight and passengers, to and from points and places within the state of New Jersey, along the line of the respective roads, and between those points and the cities of New York and Philadelphia respectively.

6. There being a legitimate purpose for which these roads may be constructed and used, and for which a junction between them may be formed, the defendants cannot be re-

strained from effecting such a junction merely because it may be perverted to an unlawful purpose.

7. The fact, that either of the said roads, or the connecting link between them, is being constructed without lawful authority, either because no survey of the route has been filed in the office of the secretary of state, or because it is not constructed in conformity to the route prescribed by its charter, constitutes no ground for equitable relief against such construction at the instance of the complainants, unless their rights will be thereby violated.

8. Such unauthorized construction and connection of the roads may afford evidence tending to show a fraudulent design, on the part of the directors, to violate the rights of the complainants; but it is not sufficient, upon a motion for a preliminary injunction, to overcome the answers of the defendants under their corporate seals, and under the oaths of their officers, who are made defendants for the purpose of discovery.

9. Under the view taken by the court of the true construction to be given to the contract between the state and the complainants, the answer of the defendants is a full denial of the equity of the complainants' bill, and renders the allowance of an injunction before the final hearing improper.

10. If the roads of the defendants, by means of the contemplated connection, should be used for the purpose of transporting passengers or merchandise between the cities of New York and Philadelphia, or to compete in business with the railroads of the complainants between the said cities, in violation of the contract between the state and the complainants, full and adequate protection to the complainants' rights can be given by injunction restraining such use of the roads.

11. No duties imposed upon the defendants, in the prosecution of their legitimate business, by their acts of incorporation, and no contract into which they may have entered or may enter with third persons or with each other, can

justify any violation of the rights of the complainants, or afford protection against the consequences of such violation.

12. The state is no party to this suit. Her sovereignty cannot be trenched upon, nor her right of eminent domain impaired by any decision in this cause, nor by any unauthorized or illegal acts which may be done or permitted by the defendants under color of her authority.

13. If the roads of the defendants, by means of the connection that may be made between them, either lawfully or unlawfully, shall be fraudulently used in violation or evasion of the sovereign rights of the state, she has the power, and is fully competent to guard those rights.

The application for an injunction must be denied, and the rule to show cause discharged with costs.